# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AKIDA BERRY,

    Plaintiff,

v.                                                                                                                                     Case No. 08-C-0398

WAUSHARA COUNTY JAIL and LT. PETERMAN,

    Defendants.

## DECISION AND ORDER

The plaintiff, Akida Berry, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed *in forma pauperis* and for screening of the plaintiff's complaint.

Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is required to pay the statutory filing fee of $350.00 for this action. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The plaintiff has been assessed and paid an initial partial filing fee of $13.21. He also has made subsequent partial filing fee payments of $10.78, $10.80, $10.80, $21.51, $0.16. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis* and direct the Wisconsin Department of Corrections to collect the $282.74 remainder of the filing fee for this action.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

-2-

Case 2:08-cv-00398-JPS    Filed 11/04/08    Page 2 of 14    Document 7

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**COMPLAINT AVERMENTS**

The plaintiff is currently incarcerated at Racine Correctional Institution. However, the complaint concerns events that occurred while the plaintiff was

-3-
Case 2:08-cv-00398-JPS   Filed 11/04/08   Page 3 of 14   Document 7

incarcerated at the Waushara County Jail.[1] He asserts the defendants violated his right to free exercise of religion under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The plaintiff names the Waushara County Jail and Jail Administrator Lt. Peterman as defendants. The plaintiff seeks to sue the defendants in their individual and official capacities.

**Dietary Allegations**

The plaintiff alleges: "Defendants failed to accommadate [sic] my religious dietary rules [an Halal diet], even though they serve Kosher approved products, but will not serve Halal approved products."

On March 29, 2008, the plaintiff communicated a request for a list of items the jail serves that contain pork and pork by-products. He also asked about alternative diets available for Muslims. Staff Member McElroy responded by giving the plaintiff the pork product list from food service.

The plaintiff made a complaint on March 30, 2008, stating that he is not a vegetarian but practices the Halal diet consistent with his Muslim religion. Jail staff responded the next day, "You can choose to have vegetarian meals or do self-select which means you choose not to eat what's on the tray. Kitchen will do only one or the other."

---

[1] The plaintiff attached thirteen Waushara County Jail Inmate Communication Forms to the complaint, documenting his correspondence with various jail staffers, a list from food service of current products containing pork, excerpts from the Wisconsin Administrative Code regarding the Department of Corrections and a canteen order sheet. These attachments are considered part of the complaint. *See* Fed. R. Civ. P. 10(c).

On April 13, 2008, the plaintiff submitted a communication form marked as a Complaint/Concern and an Appeal. He wrote that he was forced to have a vegetarian diet because the jail would not give him a Halal diet. He alleged the vegetarian diet caused him medical problems, including gas, that resulted in him changing his religious behavior. Specifically, the plaintiff stated that the gas broke his wudu cleansing and prevented him from praying his salal until he did the wudu ritual of cleaning again. Nurse Dave Reich responded by encouraging the plaintiff to increase fluids, walk moderately and consider antacid from the canteen. Nurse Reich also scheduled a medical visit for the plaintiff that week.

Also on April 13, 2008, the plaintiff submitted an appeal again requesting the Halal diet. The plaintiff complained that the vegetarian diet is still forbidden because the food is prepared with the same kitchen equipment and utensils as pork and pork by-products. Lt. Peterman responded, "We do not offer a Halal diet at this time. I contacted DOC and they advised that the state facilities also do not have a Halal diet option."

On April 21, 2008, the plaintiff submitted another appeal complaining that he was being given pork in forms other than meat. He complained that the vegetarian diet is not an alternative because it contains pork by-products. Lt. Peterman responded as follows:

> I am aware of your concerns, as is DOC. What we offer
> for alternative meals has been approved by DOC via the
> jail inspection process. Also, after reviewing your canteen
> orders, are you certain the items you are purchasing are
> halal compliant? Are you sure the 15 bags of hot fries you

purchased last week were not processed by the same machine, utensils, or facility that processes pork rinds? Or that Now & Laters or Skittles do not contain some sort of Gelatin?

**Religious Items**

The plaintiff asserts that "[d]efendants refused to let me order my Islamic religious items." On March 30, 2008, the plaintiff submitted a written request for several Islamic religious items, including an Islamic prayer book, an Islamic prayer rug, an Islamic kufi-cap and Islamic prayer oil. Lt. Peterman asked for clarification regarding whether the plaintiff was asking the jail to provide the items or whether the plaintiff already had these items and was asking to retain them in his cell.

The plaintiff submitted an appeal form on April 1, 2008, asking if he could have the religious items in his cell. Lt. Peterman responded that he had contacted the Department of Corrections and learned that all of the requested items were allowable and available for purchase through the Department of Corrections Chaplain/Canteen or direct from a designated vendor/retailer. Lt. Peterman asked the plaintiff to let him know which avenue he wished to use to get the items. Lt. Peterman informed the plaintiff that the Department of Corrections does not authorize inmates to receive religious property directly from family or visitors.

The plaintiff submitted a complaint on April 14, 2008, that stated he had no one to buy him new Islamic religious items and indicated he would need to order the items himself direct from a designated vendor/retailer and pay out of his inmate account. Lt. Peterman responded that the plaintiff is not allowed to send money out

from his account while he is staffed in a county jail. Lt. Peterman volunteered to ask about getting the items through the DOC chaplain/commissary and having them sent to the jail. The same day, the plaintiff responded that he wanted Lt. Peterman to ask about getting the religious items through the DOC chaplain/commissary. Lt. Peterman forwarded the request.

**Religious Services**

The plaintiff avers: "Defendants [Waushara County Jail and Lt. Peterman] unlawfully denied me the right to group worship, even though Christians and other religious groups were permitted communal worship, the Muslims were not." On March 30, 2008, the plaintiff asked about the religious services held at the Waushara County Jail. A staff member responded that bible study groups are held twice a week and that "Bible Bob" comes to the jail every other Tuesday and Thursday and visits each block.

**Religious Texts**

The plaintiff alleges: "Defendants forced me and other Muslims to buy a Q'uran off canteen, even though Christians and other religious groups were given Bibles for free every other Tuesday and Thursday. Nowhere on the canteen is there a Bible for sale, and or is the Q'uran given to Muslims at no cost." On April 14, 2008, the plaintiff asked whether Bible Bob passes out bibles when he visits the jail. Jail staff confirmed that he does.

On April 16, 2008, the plaintiff asked if the Waushara County Jail provided a copy of the Q'uran or if he had to buy it from the canteen. Jail staff responded that

the jail does not provide copies of the Q'uran, but informed the plaintiff he could buy one from the canteen.

On April 18, 2008, the plaintiff asked if the Waushara County Jail provided a copy of the Bible. Jail staff responded that the county does not purchase or provide bibles, but that copies of the bible are available from the canteen, from Bible Bob, or from the library (where they are provided by the Gideons). The staff member also indicated that a family member can purchase a bible and have it shipped directly from the retailer.

## LEGAL ANALYSIS

The plaintiff alleges that the defendants violated his rights under the First and Fourteenth Amendments and RLUIPA by: (1) failing to provide him with a Halal diet while Kosher meals are available; (2) refusing to let him order his religious items; (3) denying Muslims group worship; and (4) forcing him to purchase a Q'uran while Bibles were given out for free.

**First and Fourth Amendment Claims**

In the prison context, the free exercise and equal protection analyses turn on the same question of reasonableness. The Free Exercise Clause protects a prisoner's right to practice his religion as long as doing so does not unduly burden the institution. *Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992). A prison regulation that infringes upon an inmate's free exercise rights may be valid "'if it is reasonably related to legitimate penological interests,'" *Alston v. DeBruyn*, 13 F.3d 1036, 1039 (7th Cir. 1994) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see*

*also Al-Alamin v. Gramley*, 926 F.2d 680, 687 (7th Cir. 1991) (prison staff "need only make reasonable efforts to afford inmates an opportunity to practice their faith"). Likewise, the Equal Protection Clause requires inmates to be treated equally; however, a prison regulation that treats inmates unequally will be upheld if it is reasonable in light of legitimate penological interests. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). In sum, a plaintiff who alleges an equal protection claim stemming from an assertion that the government has denied him the free exercise of his religion beliefs, can have his claim examined in light of the Free Exercise Clause. *Mack v. O'Leary*, 80 F.3d 1175, 1180 (7th Cir. 1996).

"A prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion, and if the prison has sound penological interests supporting the restriction and, if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment." *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). A standard of reasonableness, rather than the heightened scrutiny standard, applies in the prison context "to permit prison administrators 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration[,]' and thereby prevent unnecessary federal court involvement in the administration of prisons." *Al-Alamin*, 926 F.2d at 685 (quoting *Turner*, 482 U.S. at 89).

**RLUIPA**

To establish a claim under RLUIPA, a prisoner must show that a prison receiving federal funds has enacted a regulation that renders his exercise of a

religious practice effectively impractical. *See* 42 U.S.C. § 2000cc-1; *Koger v. Bryan*, 523 F.3d 789, 796, 799 (7th Cir. 2008); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). If the inmate succeeds, the burden shifts to prison officials to demonstrate that the regulation is the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000cc-1; *Koger*, 523 F.3d at 796. A prison has a compelling interest in maintaining security, *see Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006); *Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987), and courts are particularly deferential to the judgment and expertise of prison administrators when they analyze whether a regulation is necessary to further that interest, *see Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005); *Koger*, 523 F.3d at 800.

**Waushara County Jail**

The Waushara County Jail is not a "person" for purposes of federal civil rights statutes. *See Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993). The jail is, therefore, not a suable entity under 42 U.S.C. § 1983 and it will be dismissed as a party to this action.

**Lt. Peterman**

The plaintiff identifies defendant Lt. Peterman as the "Jail Administrator" and seeks to sue him in his official and individual capacity. Prison officials cannot be liable under a theory of *respondeat superior* in §1983 claims. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Title 42 U.S.C. § 1983 does not create a claim based on collective or vicarious responsibility. *See Pacelli v. deVito*, 972 F.2d 871,

875 (7th Cir. 1992). An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1240 (7th Cir. 1994), cert. denied, 115 S.Ct. 937 (1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). To the extent Lt. Peterman was not personally involved in a particular decision, he cannot be liable individually under § 1983.

However, the plaintiff's complaint appears to be challenging policies of the Waushara County Jail in addition to the specific actions of its employees. As such, Lt. Peterman in his official capacity is an appropriate defendant.

**Injunctive Relief**

In addition to various forms of monetary damages, the plaintiff requests both preliminary and permanent injunctive relief. When prison inmates challenge prison practices, their equitable claims are moot after they are moved to other prisons that do not apply those practices. *Stewart v. McGinnis*, 5 F.3d 1031, 1037-38 (7th Cir. 1993); *see also Fuller v. Dillon*, 236 F.3d 876, 883 (7th Cir. 2001) (finding plaintiff prisoner's equitable relief claims challenging prison policies moot after he had been transferred); *Henderson v. Sheahan*, 196 F.3d 839, 849 n. 3 (7th Cir. 1999) (same). The plaintiff's claims for injunctive relief will be denied as moot because he is no longer incarcerated at the Waushara County Jail.

The court finds that the plaintiff has alleged sufficient facts to support claims regarding his religious items and Halal diet against Lt. Peterman individually. The court also finds that the plaintiff has alleged sufficient facts to support the following

claims against Lt. Peterman in his official capacity as jail administrator: (1) failure to provide the plaintiff with a Halal diet while Kosher meals are available; (2) refusal to let the plaintiff order his religious items; (3) denying Muslims group worship; and (4) forcing the plaintiff to purchase a Q'uran while Bibles were given out for free.

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's request to proceed *in forma pauperis* (Docket #2) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that defendant Waushara County Jail be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that plaintiff's claims for preliminary and permanent injunctive relief be and hereby are **DISMISSED** as moot;

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon defendant Lt. Peterman pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service;

**IT IS FURTHER ORDERED** that the defendant shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $282.74 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action;

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 4th day of November, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge