# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AKIDA BERRY,

        Plaintiff,

v.                                                                                 Case No. 08-CV-398

LT. PETERMAN,

        Defendant.

## ORDER

The plaintiff, Akida Berry, is proceeding *in forma pauperis* on claims under 42 U.S.C. § 1983. The plaintiff was allowed to proceed on claims against Lt. Peterman individually regarding the plaintiff's religious items and Halal diet. He was also allowed to proceed on official capacity claims against Lt. Peterman for: (1) failure to provide the plaintiff with a Halal diet while Kosher meals were available; (2) refusal to let the plaintiff order his religious items; (3) denying Muslims group worship; and (4) forcing the plaintiff to purchase a Q'uran while Bibles were given out for free. Now before the court is the defendant's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show . . . no genuine issue as to any material fact . . . and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion. Instead, "the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). For a dispute to be genuine the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *Bethlehem Steel Corp v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). However, a court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citing *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)).

The moving party bears the initial burden of showing that there are no material facts in dispute and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant moving for summary judgment may satisfy this initial burden by pointing to the plaintiff's failure to introduce evidence sufficient to support the cause of action alleged. *Id.* at 325. Once the moving party meets its initial burden, the nonmoving party must "go beyond the pleadings" and designate specific facts to support its cause of action, showing a genuine issue for trial. *Id.* at 322-25.

When the moving party does not bear the burden of proof at trial, he can prevail on a motion for summary judgment by showing that there is an absence of evidence to support any essential element of the non-moving party's case. *Celotex*

-2-

*Corp.*, 477 U.S. at 322-23. However, where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 248; *Select Creations, Inc. v. Paliafito America, Inc.*, 911 F. Supp. 1130, 1149 (E.D. Wis. 1995).

## BACKGROUND

The plaintiff is a Wisconsin state prisoner who was housed at the Waushara County Jail (the "Jail") from March 28, 2008, through June 6, 2008, pursuant to a contract between Waushara County and the Wisconsin Department of Corrections.

**1. Halal Diet**

On March 29, 2008, the plaintiff submitted a request that said:

> I am a practicing muslim and I don't eat Pork or any Pork biproducts due to my religion. Could you please send me a list of pork items that you serve, and the biproducts, what is the alternative diet that you have for muslims.

(Declaration of Akida Berry, Exhibit 2, hereinafter "Berry Dec, Ex. __"). This was the first request the Jail had ever received for a Halal diet. A corrections corporal responded to the request and provided the plaintiff with a list of food items containing pork that were served at the Jail. On March 30, 2008, the plaintiff submitted the following request:

-3-

> I am a practicing muslim and I don't eat pork or any pork biproducts due to my religion. I am not a vegetarian. I eat meat. I don't eat pork. The diet is called a Halal diet which is a diet that requires all meat that is to be eaten, to be slauhtered in an Islamic fashion pronouncing "Bismilah = In the name of Allah and Allsha Akbar = God is the Greatest." I am not allowed to eat Pork or any biproducts with pork. This diet is consistent with my heart felt sincere, belief as I practice my religion this is a Necessity, there is no substitute for an Halal diet, but an Halal diet.

(Berry Dec., Ex. 4). On March 31, 2008, a correctional officer responded, "You can choose to have vegetarian meals or do self-select which means you choose not to each what's on the tray. Kitchen will do only one or the other." *Id.*

On March 31, 2008, the plaintiff submitted a request "to be put on a vegetarian diet, since there is no other alternative diet for muslims." (Berry Dec., Ex. 5). Nurse Dave Reich approved the plaintiff's request on April 1, 2008.

Defendant Lieutenant Peterman first learned about the plaintiff's request for a Halal diet when he received the plaintiff's appeal on April 14, 2008. The plaintiff's appeal, dated April 13, 2008, stated:

> I am requesting a Halal diet, the vegetarian diet which I was put on is still forbidden because the vegetarian meals is being prepared with the same pots, pans, stove, counter top, knifes, spoons, forks etc. of that which pork or pork products was prepared with, including pork bi-products. I ask that we come to some resolve about this situation please.

(Berry Dec., Ex. 7). Lt. Peterman contacted the Department of Corrections (DOC) to learn more about the Halal diet and found out that the DOC was working on making a Halal diet available but that it had not yet done so. Lt. Peterman provided the plaintiff with the following response: "We do not offer a Halal diet at this time. I

-4-

contacted DOC and they advised that the state facilities also do not have a Halal diet option." *Id.*

The plaintiff filed an appeal on April 21, 2008, that stated:

> I'm still giving pork, but not in the meat form but in other forms such as Jello, macoronne and cheese, crackers, pudding, cake with animal oil based icing. The vega diet is not an alternative, because it still have all the biproducts of pork. I am being forced to modify my religious behavior. In which the modification is not consistent with the teachings of the Quran.

(Berry Dec., Ex. 8). Lt. Peterman's April 22, 2008, response indicated:

> I am aware of your concerns, as is DOC. What we offer for alternate meals has been approved by DOC via the jail inspection process. Also, after reviewing your canteen orders, are you certain the items you are purchasing are Halal compliant? Are you sure the 15 bags of hot fries you purchased last week were not processed by the same machine, utensils, or facility that processes pork rinds? Or that Now & Laters or Skittles do not contain some sort of Gelatin?

*Id.*

Lt. Peterman also investigated the possibility of providing a Halal diet option at the Jail. He consulted with his kitchen manager and the Jail's food service provider and learned that special food preparation procedures and facilities are necessary to provide a Halal diet. He also learned that providing a Halal diet is costly and the food choices are limited. Lt. Peterman issued a memo on May 14, 2008, announcing that the Jail would offer a Halal diet option beginning June 1, 2008.[1] On June 1, 2008, the plaintiff used an inmate communication form to request a Halal diet, and his request was forwarded to the kitchen on June 2, 2008.

---

[1] The complaint in this action was filed on May 8, 2008.

-5-

**2. Religious Items**

On March 30, 2008, the plaintiff submitted a request for "Islamic prayer beads, Islamic prayer rug, Islamic kufi-cap, and Islamic prayer oil." (Berry Dec., Ex. 14). On April 1, 2008, Lt. Peterman received a copy of the request on April 1, 2008, and asked the plaintiff for clarification: "Are you able to provide these items or are you asking us to provide them? I take from the language in your request that you have the items you are just requesting the ability to retain them in your cell. Is this correct?" *Id.*

The plaintiff submitted an appeal on April 1, 2008, which stated: "I would like to know if I can have the following Islamic religious items in my cell. Islamic prayer beads, Islamic prayer rug, Islamic kufi-cap and Islamic prayer oil." (Berry Dec., Ex. 15). Lt. Peterman responded:

> I have contacted DOC. They have stated all the items you list are allowable and available for purchase through DOC Chaplain/Canteen or direct from a designated vendor/retailer. Please let me know which avenue you wish to use. Per DAI policy 309.61.01 Chapter 309(IV)(C) "Religious property received directly from family or visitors is not authorized."

*Id.* Lt. Peterman e-mailed DOC employee Barbara Zink, as well as jail staff members, regarding the plaintiff's requests for religious items on April 1, 2, and 7, 2008.

The plaintiff submitted a complaint on April 14, 2008, regarding the religious items:

> I have no one to go buy me new Islamic religious items, prayer beads, Islamic prayer rug, Islamic kufi-cap and Islamic prayer oil. I will need to order these items myself direct from a designated vendor/retailer, and the money would need to come off my inmate acct.

(Berry Dec., Ex. 16). Lt. Peterman responded the same day:

> Per DOC you are not allowed to send money out from your acct. while you are staffed in a county jail. If you wish I could ask about getting the items through DOC chaplain/commissary and having them sent here. I assume that there would be a charge for this service from DOC.

*Id.* The plaintiff confirmed, "Yes, Mr. Peterman could you please ask about getting my religious items through D.O.C. chaplain/commissary following items: prayer beads, Islamic prayer rug, Islamic Kufi-cap and Islamic prayer oil." (Berry Dec., Ex. 17). Lt. Peterman forwarded the plaintiff's request to the DOC and received e-mails from Barbara Zink on April 28, 2008, and May 5, 2008, regarding the plaintiff's order. The plaintiff submitted no further requests regarding the religious items.

**3. Quran**

On April 14, 2008, the plaintiff asked, "When Bible Bob comes to visit the jail on Tuesdays and Thursdays do he passes out Bibles." (Affidavit or George Peterman, Exhibit 18, hereafter "Peterman Aff., Ex. __"). A correctional officer confirmed the same day that Bible Bob, a local volunteer, distributes Bibles. On April 16, 2008, the plaintiff made another request, "Do Waushara County jail provide a copy of the Quran, or do I have to buy it off the canteen." (Peterman Aff., Ex. 19). The same day, a correctional officer confirmed that the plaintiff could purchase a Q'uran from the canteen. An April 18, 2008, request from the plaintiff asked: "Does

-7-

Waushara County Jail provides a copy of the Bible?" (Peterman Aff., Ex. 20). A corrections corporal responded on April 19, 2008: "The County does not purchase or provide Bibles. They are available on canteen or they can be obtained from Bible Bob, from the library where Gideons place them or a family member can purchase one and have it shipped directly from the retailer." *Id.* Ultimately, the plaintiff purchased a Quran from the Canteen.

**4. Group Worship**

On March 30, 2008, the plaintiff asked in a request, "Do the county jail provide any religious services, what are the religious services and what are the days and time these services are offered." (Peterman Aff., Ex. 22). A correctional officer responded on April 1, 2008, by listing dates and times of all Bible studies and dates when "Bible Bob" volunteered at the Jail.

The plaintiff submitted an appeal on May 12, 2008, after he filed this action, which asked: "Mr. Peterman there are no Qurans available in the library only Bibles. Also when will there be Islamic services held?" (Peterman Aff., Ex. 21). Lt. Peterman responded:

> Our library is stocked w/ 100% donated materials. If there are no Quran's it is because no one has donated any. Quran's are available for purchase on canteen. As I stated before to your request for Islamic, We do not have a local resource to provide the services, however if you know of someone who is qualified to provide such services, and would be willing to do so, forward me the name & number I will initiate the contact with the individual.

*Id.* The plaintiff submitted no further communication regarding group worship.

-8-

## DISCUSSION

The defendants argue that they are entitled to summary judgment because: (1) the plaintiff failed to properly exhaust his administrative remedies before bringing his lawsuit; (2) Lt. Peterman was not personally involved in any deprivation of the plaintiff's constitutional rights; (3) Lt. Peterman cannot be held liable in his official capacity because there was no municipal policy or custom that resulted in a constitutional deprivation; (4) the plaintiff's religious exercise was not substantially burdened by any jail regulation or policy and, it if was, any burden was justified by a legitimate and/or compelling governmental interest; and (5) Lt. Peterman is entitled to qualified immunity.

In response, the plaintiff submits that he properly exhausted his administrative remedies, consistent with the information he was given by employees at the Waushara County Jail. He also contends that Lt. Peterman was personally involved in the constitutional deprivation, that his religious exercise was substantially burdened by practices that were not the least restrictive means of protecting a compelling governmental interest, and that the deprivation of his constitutional rights resulted from a municipal policy or custom. Finally, the plaintiff argues that Lt. Peterman is not entitled to qualified immunity.

### I.  EXHAUSTION

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal

-9-

Case 2:08-cv-00398-JPS    Filed 02/26/10    Page 9 of 16    Document 35

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). Exhaustion is an affirmative defense, and the burden of proof is on the defendants. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The defendant sets forth the Waushara County Jail's grievance procedure, effective in 2008, which was printed in the inmate rule book. The defendant submits that the plaintiff received a copy of the inmate rule book when he arrived at the Jail. The defendant correctly points out that the plaintiff's affidavit does not contain an

averment that he did not receive the inmate rule book. However, in his sworn brief in opposition to the defendant's motion for summary judgment, the plaintiff avers:

> **Mr. Berry was not aware of or given a copy of any specific grievance process in place in 2008 for inmates who wished to challenge a decision with which an inmate disagreed**. On April 12, 2008, Mr. Berry inquired about the grievance system on an inmate communication form, 15 days after he arrived at the Jail. Mr. Berry asked on an inmate communication form, "Does Waushara County Jail has a grievance system, if so how does it works." Staff member, Corporal Michael Timm, responded to Mr. Berry request stating. "To file a grievance, use an inmate communication form and address it to whoever you want at the top of the form." See Exhibit 6 Affidavit of Akida Berry.

(Plaintiff's Brief, pp. 14-15) (emphasis added). Because this statement is part of the plaintiff's sworn brief, it constitutes admissible evidence. *See* 28 U.S.C. § 1746.

At the very least, there is a material question of fact regarding whether the plaintiff ever received the Waushara County Jail inmate rule book. Thus, the court cannot at this stage hold the plaintiff to the requirements set forth therein.

## II.   OFFICIAL CAPACITY POLICY CLAIMS

"An official capacity suit is tantamount to a claim against the government entity itself." *Klebanowski v. Sheahan*, 540 F3d 633, 637 (7th Cir. 2008) (internal quotation omitted). The plaintiff must, therefore, establish that the constitutional violation came about as a result of a custom or policy established by the officials. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *see also Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000) ("A plaintiff must show that municipal policy makers made a deliberate choice among various alternatives

-11-

and that the injury was caused by the policy.") (quotation omitted). Three forms of unconstitutional policies or customs are recognized in this context:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003) (quotation and citation omitted).

To survive summary judgment on a § 1983 official capacity claim, the plaintiff must present evidence demonstrating the existence of an "official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (quoting *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007)). "Further, the plaintiff must show that the official policy or custom was the *cause* of the alleged constitutional violation - the moving force behind it." *Grieveson*, 538 F.3d at 771 (emphasis in original) (internal quotation and citation omitted).

In *Grieveson*, the Seventh Circuit found that the plaintiff had not put forth adequate evidence showing that the alleged practice was widespread and reflective of a policy choice, "which is the pivotal requirement of a § 1983 official capacity claim." *Id.* at 774. The same is true here. The plaintiff has set forth no evidence that Lt. Peterman or anyone in Waushara County made a policy choice to deny the plaintiff a Halal diet, his requested religious items, a Q'uran, or Muslim group

worship. Rather, the record reflects that county officials carefully considered each request and did what they could to grant it.

Upon receipt of the plaintiff's request for a Halal diet, Lt. Peterman researched the availability of a Halal diet within the Wisconsin Department of Corrections, learned about its requirements, and investigated how to make a Halal diet available at the Jail. On May 14, 2008, Lt. Peterman announced via memo that the Jail would offer Halal meals to Muslim inmates four days per week, effective June 1, 2008. The plaintiff requested and received the Halal meals when they became available, prior to his transfer from the Jail. When the plaintiff made his request, the Jail did not have a policy regarding the provision of Halal meals. Nor did a decision-maker act to deny the plaintiff's request. In fact, as a result of the plaintiff's request, the Jail began offering Halal meals.

Regarding the plaintiff's request for various religious items, Lt. Peterman first confirmed that the items the plaintiff requested were allowed by the DOC. Upon receiving that confirmation, Lt. Peterman communicated with the plaintiff and the DOC regarding the procedure for getting the plaintiff the items he requested. There is certainly no evidence that the Jail had a policy or custom forbidding the religious items the plaintiff requested, or that a decision-maker deprived the plaintiff of the items.

The plaintiff made various requests regarding the availability of the Bible and the Q'uran at the Jail. He implied a suspicion that the Jail provided free Bibles to

-13-

inmates but required them to purchase Q'urans from the canteen. The answers to the plaintiff's requests reveal no policy or custom of the Jail itself providing free Bibles to Christian inmates while requiring Muslim inmates to purchase Q'urans from the canteen. Both Bibles and Q'urans were available for purchase from the canteen. The free Bibles were donations to the library or inmates by the Gideons and/or "Bible Bob." The responses to the plaintiff's requests indicate that donations of Q'urans would be welcome as well but, in the absence of donated items, inmates were responsible for purchasing their own religious texts.

Finally, the plaintiff has presented no evidence of a denial of his request for Muslim group worship. Lt. Peterman's response to the plaintiff's request expressed that the Jail did not have anyone locally to lead Islamic prayer services. However, Lt. Peterman asked the plaintiff to provide information regarding someone who could lead the services and indicated he would gladly speak to them about having Muslim group worship at the Jail.

The record contains only evidence of attempts to accommodate the plaintiff's requests. As such, if the plaintiff's requests were denied at all, it was not due to a policy or custom of the Jail, or an act of a decision-maker. Because the plaintiff is unable to show the existence of an "official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department," the defendant is entitled to summary judgment on the plaintiff's official capacity claims against Lt. Peterman. *Grieveson*, 538 F.3d at 771.

-14-

## III. INDIVIDUAL CAPACITY CLAIMS

The defendant also argues that the plaintiff's individual capacity claims should be dismissed because Lt. Peterman lacked personal involvement in any constitutional deprivation. An official will satisfy the personal involvement requirement of § 1983 if he deliberately disregards the plaintiff's constitutional rights. *See Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004).

Lt. Peterman was personally involved in the events underlying the plaintiff's claims regarding the Halal diet and the religious items. However, Lt. Peterman never denied the plaintiff either the Halal diet or the religious items. On the contrary, he worked to satisfy the plaintiff's requests. Lt. Peterman announced on May 14, 2008, that the Jail would begin offering Halal meals four times a week, effective June 1, 2008, approximately two months from the plaintiff's first request. Additionally, Lt. Peterman worked with the DOC to obtain the religious items the plaintiff requested. He even followed up by e-mail to check on the status of the order without the plaintiff asking him to do so. Even if the plaintiff could prove some violation of his constitutional right, Lt. Peterman was not part of it. Because he did not deny the plaintiff's requests for a Halal diet or religious items, Lt. Peterman is entitled to summary judgment on the plaintiff's individual capacity claims against him.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (Docket #17) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment dismissing this case.

Dated at Milwaukee, Wisconsin, this 26th day of February, 2010.

BY THE COURT:

*J.P. Stadtmueller*
J.P. Stadtmueller
U.S. District Judge